**Jo Anne Smith DWIGHT (Redditt),**
**Plaintiff-Appellant,**

v.

**Gregory Scott DWIGHT,**
**Defendant-Appellee.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

July 10, 1996.

Application for Permission to Appeal
Denied by Supreme Court
Nov. 4, 1996.

Gerald F. Easter, Memphis, for Appellant.

Valerie T. Corder, Memphis, for Appellee.

CRAWFORD, Presiding Judge (Western Section).

Jo Anne Smith Dwight Redditt (Wife) appeals the trial court's order denying her petition to modify the parties' final decree of divorce to increase child support payments by Gregory Scott Dwight (Husband).

The parties married April 15, 1983 and were divorced by final decree entered February 21, 1990. Two children were born of the marriage; Victoria Nicole Dwight, born November 1, 1983, and Daniel Adam Dwight, born June 11, 1986. Pursuant to the final decree of divorce, the court awarded joint custody to the parties, with Wife having primary physical custody.

On February 1, 1994, Wife filed a petition to modify the parties' final divorce decree by increasing the child support awards. Wife alleges that the children's needs have increased as they have gotten older, and that Husband's income and ability to pay child support have also increased, constituting a material change in circumstances. Wife seeks to increase Husband's child support payments to an amount that is in compliance with the Child Support Guidelines promulgated by the Tennessee Department of Human Services. Tenn.Comp.R. & Regs. tit. 10, ch. 1240–2–4–.01 *et seq.* (1989, revised 1994) (Guidelines). Additionally, Wife requested that she be permitted to take the children as deductions on her federal income tax return, and that Husband pay all attorney fees and court costs.

On September 15, 1994, the divorce referee entered an order finding that Husband's income had not increased significantly, but that the expenses of the parties' children had increased significantly. The referee raised Husband's child support obligation to $1,000.00 per child, per month and ordered Husband to pay $3,000.00 toward Wife's attorney's fees. On October 20, 1994, the trial judge signed an order increasing child support consistent with the referee's ruling, and

Husband appealed. By order entered November 22, 1994, the trial judge set aside his previous order affirming the referee's ruling and denied Wife's petition to modify child support. Wife perfected the present appeal and presents two issues for review:

1. Whether the trial court erred in failing to increase the child support award?

2. Whether the trial court erred in failing to award attorney fees?

Husband is employed as a pilot at Federal Express Corporation and was so employed at the time of the divorce. In 1990, the year of the divorce, Husband's annual income was $128,326.00; in 1991, Husband's income was $127,900.00; in 1992, $158,220.00; and in 1993, $165,775.00. At the time of trial, November 18, 1994, Husband predicted that his income for 1994 would be between $123,000.00 and $126,000.00. In explaining this reduction in income, Husband stated that, prior to 1994, he was a first officer on the DC–10 airplane and received a significant amount of income as a result of overtime pay ($41,200 in 1992). Husband testified that, due to corporate plans to hire additional pilots at Federal Express in 1994 and thereby reduce the number of overtime hours available to DC–10 pilots, he trained for and was awarded a position as captain on the 727 airplane. Because he has a lower seniority status as a 727 captain than he had as a DC–10 first officer, Husband is lower in the bidding pool and is not able to get as many overtime hours.

Testimony at trial revealed that Husband does not exercise his visitation rights on a regular basis. Husband testified that his children have spent one to two weekends with him since the parties' divorce in 1990. He stated that he has exercised one full week of visitation with the children in three of the last four years, but never more than one week. According to Husband, Wife makes it difficult for him to exercise his visitation rights by frequently canceling scheduled visitation periods. Because of his irregular

schedule as a pilot, Husband often exercises his visitation for a few hours after the children get out of school. He testified that the children cry and insist on spending the night with their mother when he suggests overnight stays.

At the time of trial, Wife and both children were living with Husband's parents.[1] Wife, who has a GED equivalent, earns an hourly wage of $7.03. Wife stated that she wanted to live on her own, but could not afford to pay her expenses as well as those of her children based upon her monthly income and Husband's child support payment. In a deposition taken prior to trial, Wife testified that the children's needs could be met with between $3,500.00 and $4,500.00 per month. Although Wife stated at trial that the children's individual, personal needs did not exceed $500.00 per month, per child, she testified that the $500.00 sum does not include the children's pro rata share of rent and household expenses, groceries, gasoline, etc. Currently Husband pays $550.00 per month, per child, as well as medical insurance and tuition. Husband requested that Wife produce receipts evidencing the children's increased needs; however, Wife did not comply with this request. Wife did testify with specificity regarding the children's increased needs for clothing, hair care, and school items (such as lunch money, miscellaneous books and field trips) since the time of the parties' divorce.

According to Wife, Husband makes no effort to see his children. Wife denies that she frequently interferes with scheduled visitation periods. She testified that Husband treats his children differently than he treats the child of his current wife. Wife also stated that Husband's current wife is not nice to her children. Wife testified that, in addition to spending very little time with his children, he spends very little money fulfilling their wants and needs.

Since this case was tried by the court sitting without a jury, we review the case *de*

1. Following the parties' divorce in 1990, Wife remarried. Wife divorced a second time in October ber of 1993, and subsequently she and the parties' children moved in with Husband's parents.

*novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

Modification of an existing child support order is controlled by T.C.A. § 36–5–101(a) (Supp.1995), which states, in pertinent part:

> In cases involving child support, upon application of either party, the court shall decree an increase or decrease of such allowance when there is found to be a significant variance, as defined in the child support guidelines established by subsection (e), between the guidelines and the amount of support currently ordered unless the variance has resulted from a previously court-ordered deviation from the guidelines and the circumstances which caused the deviation have not changed.

Currently, a "significant variance" is 15%. *See* Tenn.Comp.R. & Regs. tit. 10, ch. 1240–2–4–.02(3); *Turner v. Turner*, 919 S.W.2d 340, 343 (Tenn.App.1995).

T.C.A. § 36–5–101(e)(1) (Supp.1995) provides:

> In making its determination concerning the amount of support of any minor child or children of the parties, the court shall apply as a rebuttable presumption the child support guidelines as provided in this subsection. If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child(ren) or the equity between the parties.

In its "Order on Appeal from Referee," the trial court found that the Guidelines probably would not apply to the instant case; but even if they did, the presumption contained in the Guidelines had been rebutted because Husband's current income of $123,000.00 to $126,000.00 is actually less than his income at the time of divorce; $128,386.00.

The trial court, citing T.C.A. § 36–5–101(h), stated that the law does not require parties' provisions for support to meet the Guidelines in a marital dissolution agreement, as long as adequate provision is made for the children. T.C.A. § 36–5–101(h) (Supp.1995) states:

> Nothing in this section shall be construed to prevent the affirmation, ratification and incorporation in a decree of an agreement between the parties as to support and maintenance of a party or as to child support. In any such agreement, the parties must *affirmatively acknowledge* that no action by the parties will be effective to reduce child support after the due date of each payment, and that they understand that court approval must be obtained before child support can be reduced, unless such payments are automatically reduced or terminated under the terms of the agreement. (Emphasis added.)

In the instant case, neither the parties' marital dissolution agreement nor the final decree uses the language contained in T.C.A. § 36–5–101(h), as that statute requires. Thus, the agreement does not effectively deviate from the Guidelines under T.C.A. § 36–5–101(h). Therefore, deviation requires the trial court make a written finding that the Guidelines would create an unjust or inappropriate result. T.C.A. § 36–5–101(e)(1). No such finding was made at the time the final decree of divorce was entered. Finally, there is a rebuttable presumption in this state that the amount of support established by the Guidelines is proper; there is no requirement that the obligee spouse prove that the children's needs are equal to the amount provided for in the Guidelines. T.C.A. § 36–5–101(e)(1).

Our review of the record reveals that, although Husband has complied with the parties' original agreement from a financial standpoint, he has not exercised visitation as contemplated by the agreement. The parties' agreement contemplates visitation as follows:

> Husband shall be entitled to reasonable visitation. Such reasonable visitation shall include but not be limited to the following:

a. Each weekend beginning Friday afternoons after school until Sunday night after church.

b. Alternate holidays ...

c. Four weeks during the year, but not necessarily in the summer or consecutively.

Wife contends that the trial court erred in overruling the decision of the divorce referee and failing to award Wife child support at least equal to an amount called for in the Guidelines based on the fact that the children never spend the night or a weekend with their father, or go on vacation with him.

The Child Support Guidelines were promulgated, *inter alia*, to provide equitable child support awards and to ensure that when parents live separately and there is a difference in the parents' economic status, children share in the higher standard of living enjoyed by their parent. Tenn.Comp.R. & Regs. tit. 10, ch. 1240–2–4–.02(2)(b)(e). Significantly, the Guidelines are intended to provide a minimum base for determining child support obligations. Tenn.Comp.R. & Regs. tit. 10, ch. 1240–2–4–.02(6).

The Guidelines allow an upward deviation where the non-custodial spouse exercises "less than average overnight visitation." The Guidelines state:

These guidelines are designed to apply to situations where children are living primarily with one parent but stay overnight with the other parent at *least as often* as every other weekend from Friday to Sunday, two weeks in the summer and two weeks during holidays throughout the year.... In situations where overnight time is divided more equally between the parents, the courts will have to make a case by case determination as to the appropriate amount of support. (Emphasis added.)

Tenn.Comp.R. & Regs. tit. 10, ch. 1240–2–4–.02(6)(7). Similarly, where overnight time is divided *less* equally between the parents, the support award should be adjusted appropriately.

The Guidelines further provide that since the percentage awards in the Guidelines are a minimum the court *shall* increase the child support award for the following reasons:

If the child(ren) is/are not staying overnight with the obligor for the average visitation period of every other weekend from Friday evening to Sunday evening, two weeks during the summer and two weeks during holiday periods throughout the year, then an amount shall be added to the percentage calculated in the above rule to compensate the obligee for the cost of providing care for the child(ren) for the amount of time during the average visitation period that the child(ren) are not with the obligor.

Tenn.Comp.R. & Regs. tit. 10, ch. 1240–2–4–.04(1)(b). Certainly the rationale contained in these provisions is equally applicable where child support payments *below* the Guideline amount have been awarded.

Trial exhibits establish that Husband requested approximately twenty hours of visitation in January of 1994, and approximately forty-five hours of visitation in April 1994. Husband testified that, in the four years since the parties' divorce, Husband kept the children for one or two weekends. He has taken the children on a single, one week vacation during three of the last four years. He has never kept his children for over one week during a single year.

While we recognize that Husband's irregular schedule as a pilot prevents him from exercising some visitation and that, at times, Wife has made it difficult for Husband to see the children, we stress that the best interest of the children is this Court's paramount concern. *See, e.g.* Tenn.Comp.R. & Regs. tit. 10, ch. 1240–2–4–.04(5); *Contreras v. Ward*, 831 S.W.2d 288, 289 (Tenn.App.1991). Whatever the reasons may be that Husband does not see his children for significant periods, the fact remains that the children need to be supported. If the children are constantly in the care of Wife, the amount of child support Wife receives should reflect the true state of affairs. Tenn.Comp.R. & Regs. tit. 10, ch. 1240–2–4–.04(1)(b).

Wife also argues on appeal that Husband's payment of the children's tuition expenses does not constitute child support under the Guidelines. We agree. The only references the Guidelines make to the payment of private school tuition are in the Guideline provisions justifying *upward adjustment for child support.*[2] Tenn.Comp.R. & Regs. tit. 10, ch. 1240–2–4–.02(6); 1240–2–4–.04(1)(c). The latter provision states:

> Extraordinary educational expenses and extraordinary medical expenses not covered by insurance shall be *added* to the percentage calculated in the above rule. (Emphasis added.)

Tenn.Comp.R. & Regs. tit. 10, ch. 1240–2–4–.04(1)(c). *See also Economides v. Economides,* No. 02A01–9109–CV–00189, 1994 WL 95870 (Tenn.App.W.S. Mar. 24, 1994) (ordering obligor to pay $2,500.00 per month in child support; the Guideline amount for three children, maintain medical insurance for the children, and pay the additional sum of $1,465.00 per month for private school tuition and fees); *Bostick v. Bostick,* No. 02A01–DH–00043, 1993 WL 90363 (Tenn. App.W.S. Mar. 30, 1993) (refusing to deduct private school tuition payments made by obligor from the minimum percentage set forth in the Guidelines); *Carter v. Carter,* No. 03A01–9210–CH–00380, 1993 WL 17128 (Tenn.App.E.S. Jan. 28, 1993) (requiring obligor, whose income exceeded the income scale provided in the Guidelines, to pay $2,000 per month; the amount set forth in the Guidelines, as well as private school tuition and expenses for the children).

For the reasons stated herein, we reverse the order of the trial court and remand this case. Upon remand, the trial court shall conduct an expedited hearing and modify the parties' final decree to comply with the Guidelines, or make a written explanation for its deviation. T.C.A. § 36–5–101(e)(1). As stated herein, tuition is not to be considered as a portion of child support under the Guideline percentages.[3] Additionally, the trial court shall consider the actual amount of visitation Husband exercises, and adjust the child support award accordingly. Finally, the trial court should consider Wife's request for attorney's fees, bearing in mind the disparity in the parties' annual incomes. All provisions for child support currently in effect shall remain in effect until the entry of another support order.

Costs on appeal are assessed against the Appellee.

FARMER and LILLARD, JJ., concur.

---

2. Although tuition is technically a form of support, it is not to be incorporated into the percentage of the obligor's income paid as support under the Guidelines. Regs. 1240–2–4–.04(1)(c). To hold to the contrary would have a punitive effect on children who attend private school; effectively reducing the amount of support the child receives by the amount of the child's tuition.

3. Parenthetically, we note that the obligor spouse's payment of tuition *may* be a basis for the trial court's deviation from the amount of support required under the Guidelines. However, such a deviation should not occur as a matter of course; rather, the trial court should only allow tuition payments to be the basis for its deviation if the award would otherwise "be unjust or inappropriate," the deviation is in the best interests of the children, and substantial equity between the parties is retained. T.C.A. § 36–5–101(e)(1).