IN THE SUPREME COURT OF TENNESSEE

AT KNOXVILLE

FILED

**June 1, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

DEBORAH LORRAINE BROOKS,     )    **FOR PUBLICATION**

       )

     Plaintiff/Appellant        )    **FILED:**  June 1, 1999

       )

V.        )    POLK COUNTY CIRCUIT

       )

RICKEY LAMAR BROOKS,        )    HON. EARLE G. MURPHY,

       )    JUDGE

     Defendant/Appellee        )

       )    No. 03S01-9804-CV-00034

For the Appellant:

Barrett T. Painter
Cleveland, Tennessee

For the Appellee:

D. Michell Bryant
Cleveland, Tennessee

**OPINION**

REVERSED AND REMANDED                          BARKER, J.

We granted this appeal to determine whether the Court of Appeals and the trial court erred in their determinations of the amount of child support to be paid by the child's father. Although both the trial court and the Court of Appeals determined that the total monthly payment should be increased from four hundred dollars ($400.00) to six hundred fifty dollars ($650.00), each court reached its conclusion upon different reasons. We conclude that both courts erred and that the base amount of child support should have been $1,241.00 per month. In addition, Mr. Brooks shall pay the child's private education expenses per the parties agreement.

In setting the amount of child support, we hold: (1) that Mr. Brooks was voluntarily underemployed; and (2) that he should pay the costs for private school tuition under the facts of this case. Accordingly, we reverse the lower courts and remand this case to the trial court for further proceedings consistent with this opinion.

**STANDARD OF REVIEW**

Our role, in cases such as this, is to review the record of the trial court de novo with the presumption that the decision of the trial court with respect to the facts is correct unless the evidence preponderates against such factual determinations. Farrar v. Farrar, 553 S.W.2d 741, 743 (Tenn. 1997). In this case, however, the trial court made no findings of fact despite the appellant's motion for specific findings of fact and conclusions of law pursuant to Tenn. R. Civ. P. 52.01. The trial court did issue written conclusions of law in response to the motion, but not findings of fact. Both the memorandum and order of the trial court simply conclude, without explanation, that Mrs. Brooks is not entitled to an increase in support, that Mr. Brooks shall pay the total private school expense of the parties' minor child, and that each party pay his or her own attorney fees. Accordingly, there was nothing found as a fact which we may presume correct. Therefore, under these circumstances, we must

2

conduct our own independent review of the record to determine where the preponderance of the evidence lies.  Devorak v. Patterson, 907 S.W.2d 815, 818 (Tenn. App. 1995); Goodman v. Memphis Park Comm'n, 851 S.W.2d 165, 166 (Tenn. App. 1992); Kelly v. Kelly, 679 S.W.2d 458, 460 (Tenn. App. 1984).

## BACKGROUND

The appellant, Deborah Lorraine Brooks, and the appellee, Rickey Lamar Brooks, were divorced in 1990 in the Circuit Court of Polk County.  The agreed order of divorce required Mr. Brooks to pay $400.00 per month as child support for the parties' four-year-old son.  Additionally, Mr. Brooks was required to maintain hospitalization insurance for the benefit of the child.  The divorce decree awarded the parties' residence, subject to its mortgage, and two office buildings to Mrs. Brooks.  Mr. Brooks was awarded certain personal items, his IRA account, two automobiles, and $175,000.00 in cash.

In March 1995, Mrs. Brooks filed a petition in the trial court for an increase in child support and to modify Mr. Brooks' visitation.[1]  In response, Mr. Brooks filed a counter-petition requesting that the court require Mrs. Brooks to pay one-half the cost of their child's private schooling and for an increase in his visitation.

The evidence introduced at the evidentiary hearing established that in 1991 Mrs. Brooks sold the residence she had been awarded in the divorce and used a part of the proceeds to finance a legal education at the University of Tennessee College of Law.  Following her graduation in 1994, she successfully completed the bar examination and obtained employment as an attorney for Title Guaranty & Trust

---

[1]There is no issue of visitation in this appeal.

3

Company in Chattanooga, Tennessee. At the time of the hearing, her annual salary was $24,960.00. In addition, in 1994 she received $14,229.00 rental income from the two office buildings awarded her in the divorce.

At the time of the divorce, Mr. Brooks was employed as a sales agent for Ben Milan Tire Company and earned $21,981.00 in 1991 from that employment. In addition, in that same year he had interest income of $8,908.00 and capital gains of $5,529.00. With his divorce proceeds he purchased some land in Benton, Tennessee. In 1992, he opened a Conoco gas station and convenience store on a portion of that property. His adjusted gross income in 1992 was $60,966.00. During 1993, he resigned from Milan Tire Company to concentrate on the management of the Conoco store and to spend more time with his son. In 1993, his total earnings from the Conoco store and Milan Tires were $95,350.00. In addition, in that same year he had interest income and capital gains totaling $10,293.00. In 1994, his earnings from the operation of the Conoco store rose to $102,087.00. He also realized $297,467.00 in capital gains from the sale of the convenience store and several profitable real estate and timber transactions. Mr. Brooks testified that he speculated in land and planned to continue that activity.

Although the Conoco store was very successful, Mr. Brooks voluntarily sold it in 1994. Thereafter, he began living off of interest income from a bank account of approximately $500,000.00 and devoted all of his time to the start up and operation of a cattle farm on approximately 159 acres of land which he owned free and clear. He testified that 1,000 acres of land adjoining his farm was for sale and that he had been advised by Benton Bank that he could borrow $200,000.00 to apply to the cost of purchase.

4

According to Mr. Brooks, in the first six months of 1995, he received $18,838.57 in interest income, but had incurred farming expenses in the amount of $12,735.19. Accepting those farming expenses as accurate, his net income was $6,103.38 from January 1, 1995, through July 10, 1995. His 1995 tax return, filed as a late exhibit, listed his adjusted gross income as $25,888.00 for that entire year.

Mrs. Brooks moved to Chattanooga in 1994, and the parties agreed to send their son to Boyd Buchanan School, a private school in Chattanooga. The tuition for the 1995-1996 school year was $3,156.00, plus $100.00 for materials. Mr. Brooks agreed to assume the responsibility for those expenses. Mr. Brooks stated the agreement extended only to the first year. Mrs. Brooks testified that Mr. Brooks told her that he would pay the tuition "as long as [Eric] wanted to go there."

Following an evidentiary hearing on July 17, 1995, the trial court held that the appellant was not entitled to an increase in child support, but required Mr. Brooks to continue paying his son's full tuition to Boyd Buchanan School.[2] The trial court declined to award any attorney's fees to Mrs. Brooks.

The Court of Appeals concluded that the trial court had erred in deciding that Mrs. Brooks was not entitled to an increase in child support.

The Court of Appeals found Mr. Brooks to be voluntarily underemployed and capable of earning a substantial income. In calculating what it to considered to be the proper amount of child support due based upon the evidence and the 1994 Child Support Guidelines, the Court of Appeals relied upon Tenn. Comp. R. & Regs. ch.

---

[2]Although the record contains a memo dated February 14, 1996, signed by the trial judge, containing a finding that "the parties have mutually agreed that the cost of tuition for the minor child to attend a private school shall be borne equally by each party," the order actually signed by the trial court several months later, following an in-chambers conference between the trial judge and the parties, ordered Mr. Brooks to be solely responsible for the private school expenses.

1240-2-4-.03(3)(f) (1994) to apply a flat ten percent (10%) per year increase since the entry of the original order. The intermediate court was of the opinion that the present income of Mr. Brooks had not been reliably established. Concluding that the ten percent (10%) annual increase was applicable to the circumstances of this case, the intermediate appellate court concluded that the child support should properly be set at $645.00 per month, presuming that the yearly increases were compounded. Reasoning that since the private school tuition was approximately $250.00 monthly, the Court of Appeals increased the monthly child support payment due from Mr. Brooks to $650.00 per month, but gave him credit on that amount for the private school tuition he was required to pay by the trial court. Thus, the Court of Appeals affirmed the trial court's decision regarding the total monthly sum to be paid by Mr. Brooks.

## DISCUSSION

This case presents an unique set of factual circumstances. The record supports the implicit findings of the Court of Appeals that Mr. Brooks liquidated his Conoco business during tax year 1994 to decrease both his income and his child support obligation. He derived a substantial capital gain from the sale of his Conoco business and did not work or earn an income as an employee in 1995. His 1995 income was derived from: (1) taxable interest in the amount of $38,109.00 (apparently interest earned, at least in part, from the proceeds of the Conoco sale); and (2) capital gains of $249.00. This income was offset by a farming loss of $12,470.00 for a total adjusted gross income of $25,888.00 in 1995. Despite the decrease in Mr. Brooks' actual income in 1995, his standard of living apparently did not change in 1995.

6

The issue now before us is whether Mr. Brooks' child support obligation should be based on his 1995 income of $25,888.00 or, if he is underemployed, should be based upon his earning potential. Our independent review of the record in this case leads us to conclude, as did the Court of Appeals, that Mr. Brooks was willfully and voluntarily underemployed at the time of the evidentiary hearing in July 1995. The Guidelines provide: "If an obligor is willfully and voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income, as evidenced by educational level and/or previous work experience." Tenn. Comp. R. & Regs. ch. 1240-2-4-.03(3)(d).

In calculating an underemployed obligor's potential income, the Court is required to consider the obligor's education and prior work experience. Mr. Brooks is a college graduate and has a history as a successful sole proprietor of a business and as a land speculator. The earnings he derived from the Conoco store were the best evidence of his earning capacity at or near the time the petition for an increase in support was filed. One year prior to the hearing, the store generated profits of $102,087.00. Moreover, since the record in this case contained Mr. Brooks' tax returns for the years 1991, 1992, 1993, 1994, and 1995, the Court of Appeals erred in concluding that reliable evidence of Mr. Brooks' earning potential was not in the record. Tenn. Comp. R. & Regs. ch. 1240-2-4-.03(3)(f). Accordingly, we impute Mr. Brooks' income for child support purposes at the time of the hearing before the trial court in this case at $102,087.00.

The appellant, Mrs. Brooks, also argues that the trial court and Court of Appeals erred in not considering Mr. Brooks' capital gains income in calculating his child support obligation. Generally, capital gains are included in the definition of gross income. See Tenn. Comp. R. & Regs. ch. 1240-2-4-.03(3)(a) (defining income to include "wages, salaries, commissions, bonuses, pay pensions, interest, trust income,

7

annuities, capital gain . . . and income from self-employment.").  Where, however, the capital gain is derived from the sale of a business that provided the obligor's principal source of income, the obligor liquidated the business in part to avoid child support obligations, and the obligor is found to be voluntarily underemployed, child support may be calculated as if the obligor is still deriving an income from the business and as if the obligor never realized a capital gain from the sale of the business.

We have held that Mr. Brooks is voluntarily underemployed and have imputed an income of $102,087.00 based on the income he made prior to liquidating his Conoco business.  Were we to then impute additional income based on the capital gains derived from sale of his Conoco store, we would have "double dipped" in calculating his imputed income.  Accordingly, under the facts of this case, the capital gains derived from the sale of the Conoco store shall not be considered when imputing Mr. Brooks' child support income.

Next, we are called upon in this case to address whether educational expenses for private schooling are considered "extraordinary educational expenses."  The Child Support Guidelines establish a rebuttable presumption of a minimum amount of child support.  Tenn. Code Ann. § 36-5-101 (1996).  Obligor parents generally cannot decrease their minimum child support obligations merely by paying other expenditures for their children.  See Dwight v. Dwight, 936 S.W.2d 945, 950 (Tenn. App. 1996) (holding obligor cannot deduct his payments of private school tuition from his mandatory twenty-one percent.).  Whether private education expense is an extraordinary education expense or a mandatory expense of the obligor under Rule 1240-2-4-.04(2) or whether it is a discretionary expense that may be ordered or equitably apportioned in the "appropriate" case under Tenn. Comp. R. & Regs. ch. 1240-2-4-.04 is an issue of first impression.

In this case now before us, however, Mr. Brooks is not seeking to reduce his twenty-one percent base child support obligation. The issue is whether Mr. Brooks shall be ordered to pay the costs of private school tuition in addition to his twenty-one percent obligation. Both Mr. and Ms. Brooks agreed that their child should attend private school. Mr. Brooks argued that he agreed only to pay the private school expenses for the first year. Ms. Brooks alleged that Mr. Brooks agreed to assume the full financial responsibility for the private school tuition and expenses. The trial court implicitly found that Mr. Brooks agreed to assume responsibility for the private school expenses and ordered Mr. Brooks to pay those expenses. The evidence does not preponderate against the trial judge's findings. We, therefore, hold that Mr. Brooks shall pay the private school expenses pursuant to the parties' agreement and we need not address whether private school expenses are extraordinary educational expenses in all cases.

Finally, based upon our independent review of the record in this case, we hold that the appellant, Deborah Lorraine Brooks, is entitled to a reasonable attorney's fee to be paid by the appellee, Rickey Lamar Brooks, to assist her in the payment of her attorney's fees made necessary by the appeal in this matter. On remand, the trial court shall determine the proper amount of those fees.

## CONCLUSION

Child support will be imputed to Mr. Brooks based upon his earning capacity of $102,087.00. Under the unique circumstances of this case, capital gains will not be used to compute Mr. Brooks' income. Accordingly, child support is awarded to Ms. Brooks in the amount of $1,241.00 per month. The child support ordered by this Court shall be effective as of March 27, 1995, the date of the filing of the petition for

modification.[3]  Mr. Brooks shall pay the private school tuition for the parties' minor child in the total sum of $3,256.00 for the 1995-96 school year based upon the agreement of the parties.  This cause is remanded to the trial court to determine the amount of private school tuition to be paid by Mr. Brooks for subsequent school years and to set a reasonable attorney's fee to be paid by Mr. Brooks.

Cost of this appeal shall be assessed against Mr. Brooks for which execution may issue if necessary.

_____
William M. Barker, Justice

Concur:
Anderson, C.J., Birch and Holder, J.J.

Birch, J. - Separate dissenting opinion

Not participating:
Drowota, J.

---

[3] See Tenn. Code Ann. §36-5-101(a)(5).

10